JOHN E. RACKY, Plaintiff-Appellee, *v.* NUNZIATA RACKY, Defendant-Appellant.

(No. 55883; )

First District—May 16, 1972.

*Rehearing denied June 13, 1972.*

William Pellicore, of Chicago, for appellant.

Wexler, Kane & Rosenzweig, of Chicago, for appellee.

Mr. JUSTICE SCHWARTZ delivered the opinion of the court:

Plaintiff originally brought this suit for annulment of his marriage to defendant. He later amended his complaint to include a count praying for annulment and a second count praying for a divorce. On the trial of the case plaintiff withdrew Count I and proceeded solely on the count for divorce, based on desertion. The trial judge granted the divorce and entered a decree accordingly. The decree denied defendant any alimony or attorneys' fees, and further found that the plaintiff was not the father of a child, Daniela, born to the defendant three months before the parties were married. Defendant appeals only from that portion of the decree which found that plaintiff was not the father of the child. She contends that the trial court disregarded positive and uncontradicted evidence in reaching its decision with respect to the child, and that the plaintiff, by his failure to reply to the allegations of fact contained in defendant's answer, has admitted the charge. The facts follow.

While plaintiff was on duty with the United States Navy he met the defendant, a native of Italy, in the seaport City of Gaeta, Italy, in 1967. Plaintiff was then 20 years old and defendant was 26. They first met in September, 1967, in a place where defendant was working as a barmaid. They lived together in defendant's apartment in Gaeta for one year, from October, 1967 through October, 1968. Plaintiff would be in port for two to three weeks, then would spend three to four weeks at sea. Plaintiff admitted having had intercourse with defendant at least 15 times during

the month of December, 1967. It was approximately nine months later [September 28, 1968] that a female child was born to the defendant in Gaeta, and the birth was duly recorded in the vital statistics of that City. The name of the child was recorded as Daniela Amato [defendant's maiden name], and the paternity and maternity of the child given at baptism was Nunziata Amato.

Defendant told plaintiff of her condition some time in the third month of her pregnancy, and plaintiff responded with letters expressing his concern and affection for the defendant and the unborn child. He continued to write such expressions of love and concern after the child's birth. Plaintiff and defendant were married on December 21, 1968, in Gaeta, at which time plaintiff signed several documents written in Italian. One of these was an acknowledgment by the parties that they recognized Daniela Amato as their daughter and recognized her legitimacy by virtue of their subsequent marriage. This acknowledgment was placed upon the birth records of the City of Gaeta.

In January, 1969, plaintiff returned to the United States and began legal preparations for bringing the defendant to this country. Through an attorney experienced in immigration matters, the necessary papers were sent to defendant in Italy, but she wrote plaintiff that she could not come. Plaintiff contacted the Italian and American consulates, but they replied that nothing could be done until defendant brought in the proper papers. When plaintiff again wrote defendant to ask why she did not sign the papers she replied, "You know why." It appears that defendant could not come to this country because of charges pending against her involving an alleged abortion.

We proceed to a consideration of defendant's contention that the trial court disregarded positive and uncontradicted evidence in reaching the decision that plaintiff was not the father of the child, and that the judgment was against the manifest weight of the evidence.

The evidence offered and received in behalf of defendant consisted of letters sent her by plaintiff during her pregnancy and after the birth of the child, the certificate of marriage, and the acknowledgment of the parties that the child was their daughter. Plaintiff sought to contradict this evidence by testifying that the letters professing his love for defendant and the child were based on the assumption that defendant loved him, and that this assumption was dispelled by certain facts—that plaintiff noted several cans of beer missing from the refrigerator when he returned from sea duty, despite defendant's dislike for beer; that plaintiff found cigar ashes when he returned from sea duty; that he received a letter from another member of the armed forces when he returned to the

United States; and that defendant would not cooperate with him when he attempted to bring her to the United States as his wife.

Plaintiff attempted to refute the evidence of the document acknowledging the child by stating that the document was in Italian and that he neither read, spoke nor understood that language, and believed that the papers he signed were only for the purpose of marriage.

At trial plaintiff testified to certain facts which tended to prove that he was the father of the child. He admitted having had intercourse with defendant at least 15 times during the month of December, 1967. Assuming the baby was of normal gestation, December was the month of conception. Moreover, plaintiff never stated that the baby was not his. He testified that a child was born of his marriage to defendant, but tried to clear up his answer by saying that he married her after the baby was born. On cross-examination plaintiff stated that he did not know if he was the father of the child. Later, on re-direct, plaintiff admitted that he told his mother the defendant was pregnant with his child. These statements were damaging to plaintiff's case, yet he never flatly denied paternity. Indeed, a careful examination of the record appears to reveal a reluctant man hesitating to disavow his own child, but pushed thereto by pressures unrevealed.

■■ The evidence must also be considered in the light of the presumption of paternity with respect to a child born prior to a marriage. The marriage of a single man to a single woman who has an illegitimate child creates some presumption that the child is his. (*Hall v. Gabbert*, 213 Ill. 208; *Stein's Adm'r v. Stein* (Ky. 1908), 106 S.W. 860; *Stevenson v. Washington's Adm'r* (Ky. 1929), 21 S.W.2d 274; *Gardner v. Gardner* (1877, S.C.), 2 App.Cas. 723 at 729.) This presumption is not strong, but should be considered with all the other evidence.

■■ Factual findings by a chancellor sitting in the divorce division receive great weight and will not be disturbed unless they are against the manifest weight of the evidence. (*Schmidt v. Schmidt*, 346 Ill.App. 436; *Carlson v. Carlson*, 80 Ill.App.2d 251.) The defendant does not challenge the divorce. The letters from plaintiff to defendant, the fact that he admitted having had intercourse with her 15 times during the likely month of conception, his failure to flatly deny paternity, his diligent efforts to bring defendant and the child to this country, and the signed acknowledgment of paternity all establish that plaintiff is the father of the child. Plaintiff's evidence consisted only of the fact that defendant would not come to the United States, that her occupation was that of a barmaid, and the circumstantial evidence that she was seeing other men. We cannot find in this any sound basis for branding the child an illegitimate.

The finding of the trial court that plaintiff was not the father of the child, Daniela, is reversed and that cause is remanded to the trial court for a hearing on the amount of support plaintiff should pay for the child, and for such other and further relief as is not inconsistent with the views and findings herein expressed. Having reversed and remanded, it is not necessary for us to consider defendant's other contention that plaintiff admitted allegations of fact in defendant's answer with respect to acknowledgment of paternity by his failure to reply.

Reversed and remanded.

STAMOS, P. J., and LEIGHTON, J., concur.