GEORGE MORELLI, Petitioner-Appellant, *v.* VIOLET L. BATTELLI, Administrator-Respondent-Appellee.

First District (2nd Division)  No. 78-822

Opinion filed January 9, 1979.

Edward L. S. Arkema, of Chicago (Eugene Lieberman, of counsel), for appellant.

Joseph P. McGah, of Forest Park (Joseph Organ, Jr., of counsel), for appellee.

Mr. PRESIDING JUSTICE STAMOS delivered the opinion of the court:

This appeal arises from a proceeding to determine heirship, instituted by petitioner George Morelli. Pursuant to a hearing in the circuit court of Cook County, Probate Division, that court found that petitioner

had not proved, by clear and convincing evidence, that he was the illegitimate son of decedent, Alphonse J. Battelli. It is from this finding that petitioner appeals.

Alphonse J. Battelli, decedent, died intestate May 24, 1976. On July 20, 1977, Violet Battelli, wife of deceased, filed a petition for issuance of letters of administration. This petition requested that she be named administrator of her husband's estate. Letters of administration did issue to Violet Battelli.

On October 7, 1977, the circuit court entered an order declaring heirship. The order stated that the following five persons were heirs of decedent: (1) Violet Battelli, wife, (2) Sandra Palumbo, daughter, (3) Diane Susek, daughter, (4) Joseph Battelli, son and (5) Patricia Battelli, daughter.

On October 11, 1977, petitioner, George Morelli, filed a petition to amend heirship. Through this petition Morelli alleged (1) that decedent was petitioner's natural father having fathered petitioner out of wedlock with petitioner's mother, Patricia Walker, (2) that decedent had repeatedly acknowledged, both publicly and privately, that petitioner was his true and natural son born out of wedlock, and (3) that petitioner should be included in the table of heirship and receive a proportionate share of deceased's assets.

On October 31, 1977, in response to Morelli's petition, Violet Battelli filed an answer to the petition to amend heirship. Battelli, through this petition, (1) demanded strict proof of petitioner's allegations and (2) stated that in absence of said proof petitioner should be denied relief and the table of heirship confirmed as originally proven.

The circuit court commenced a hearing on heirship. The hearing, subsequently to be analyzed in detail, included the testimony of various witnesses including petitioner Morelli. The court also invited counsel to submit written briefs on this matter. Following the hearing, on February 23, 1978, the circuit court entered an order finding that petitioner Morelli had not proven by clear and convincing evidence that he is the illegitimate son of decedent, Alphonse J. Battelli. The petition to amend heirship was denied. It is from this order that petitioner appeals.

■ Prior to analyzing the testimony adduced in the hearing conducted by the circuit court we note that clear and convincing evidence is required to prove the paternity of Alphonse J. Battelli. In equating the requirement of clear and convincing evidence we have determined that such evidence is a quantum of proof which leaves no reasonable doubt in the mind of the trier of fact. *In re Estate of Larimore* (1978), 64 Ill. App. 3d 470, 381 N.E.2d 76.

■■ Furthermore, we note that our scope of review is narrow in a case of this type. We cannot disturb the finding of the trial court unless such

finding is contrary to the manifest weight of the evidence. *In re Estate of Larimore* (1978), 64 Ill. App. 3d 470, 381 N.E.2d 76; *In re Estate of Conrad* (1969), 117 Ill. App. 2d 29, 254 N.E.2d 123; *In re Estate of Drisch* (1969), 112 Ill. App. 2d 242, 250 N.E.2d 513.

Patricia Walker testified that she first met decedent in the late 1940's. She indicated that their friendship grew and they eventually lived together as man and wife.

Walker discovered that she was pregnant in the fall of 1950. She testified that she and decedent planned to have a child and he was happy upon learning of her pregnancy. Decedent did, however, request that the child not be named Battelli. Decedent feared that news of the birth would find its way into a local newspaper. Walker testified that she complied with decedent's request. The child, born May 4, 1951, in Oak Park Hospital, was named George Morelli.

Walker further testified that decedent paid the hospital bill and purchased all the food and clothes for the child. She stated that she last saw decedent in 1975 at dinner with her sister and petitioner. Decedent paid for the dinner.

On cross-examination Walker noted that she was aware, prior to her pregnancy, that decedent was married. She also stated that she did not purposely become pregnant but both she and decedent desired a child. Walker testified that in the 9-month period preceding the child's birth she had sexual intercourse with no person other than decedent. Finally, Walker indicated that she had no record of the clothing expenditures allegedly made by decedent.

Marie Agnes Fese testified that she was an acquaintance of Patricia Tetzloff (Walker). Fese testified that Walker was one of three women impregnated by decedent. Fese stated that the fathering of Walker's child by decedent was common knowledge.

William Grundy, lieutenant of police for the city of Northlake, testified that he had known decedent for 18 years. Grundy stated that on an occasion when Grundy met George Morelli decedent referred to Morrelli as deceased's son.

Lieutenant Faciano of the Northlake police testified that he knew Patricia Tetzloff (Walker) for more than 16 years. He stated that he met George Morelli when Morelli was 11 or 12 years of age. Faciano indicated that he learned that decedent and Walker were the child's parents. Faciano also stated that decedent had referred to Morelli as deceased's son.

Arthur Alexandria testified that he knew George Morelli since fifth or sixth grade. He stated that Morelli had also been known as "Rick," "Ricko," and "Red." Alexandria stated that Morelli referred to decedent as Morelli's father. Alexandria also attributed the following statement to

decedent when decedent was speaking of Morelli: "My kid left his furniture in an apartment because he told me he didn't have the money to rent a truck. My son has all the answers, doesn't he?"

Thomas McClain testified that he knew George Morelli and was acquainted with decedent. McClain stated that upon decedent's introduction to McClain's mother as Morelli's father, decedent "acknowledged" the introduction. McClain further testified that when decedent and Morelli visited McClain's home Morelli introduced decedent as Morelli's father.

George Morelli, petitioner in the case at bar, next testified. Morelli stated that he was born May 4, 1951, and that his parents were Alphonse Battelli and Patricia Tetzloff (Walker).

Morelli first remembered seeing decedent at Morelli's sixth or seventh birthday party. At that time decedent allegedly gave Morelli a bicycle.

Morelli testified that he entered the service after leaving high school. He again saw decedent two or three months subsequent to his discharge from the service. Morelli stated that, at that time, he was unemployed and called his father. His father and he allegedly discussed employment and Morelli was granted a position as bartender at the Boar's Head Inn, an establishment owned by decedent. Morelli stated that he remained in the employ of decedent at the Boar's Head Inn until decedent's death.

Morelli also remembered that decedent arranged Morelli's 24th birthday party. The celebration occurred at the Boar's Head Inn. Morelli received no gifts from decedent at that time.

Linda Hansen testified that she knew decedent in 1967 when he was a police officer. Hansen worked as a waitress at the Boar's Head Inn prior to decedent's ownership of the establishment and as manager during decedent's ownership. As manager, she was responsible for banking, bookkeeping, hiring and firing. Hansen testified that she first met Morelli when he was a customer at the Boar's Head Inn. She subsequently hired him as a janitor but terminated his employment three weeks later. Hansen stated that Morelli was never employed as a bartender, cook or bouncer.

Hansen remembered Morelli's 24th birthday celebration held at the Boar's Head Inn. She stated that decedent and she arranged the party. She further indicated that decedent gave three or four birthday parties a month in order to strengthen business. She testified that Morelli received no gift from decedent on this occasion.

Lawrence Whaley, a minister, testified that he first met Patricia Walker in 1969. He met Morelli at Walker's home on several occasions. Whaley became acquainted with decedent and knew deceased as Morelli's father.

Contrary to the testimony of Linda Hansen, Whaley testified that

Morelli had worked at the Boar's Head Inn in nonjanitorial capacities. Whaley stated that he had seen Morelli tending bar, serving food and cleaning.

Violet Battelli, the wife of decedent, testified that she first heard of Morelli when he telephoned her the night of deceased's funeral. Morelli told her that he was decedent's son.

Mrs. Battelli also stated that she never saw Morelli with her son Billy (now deceased). She never observed Morelli at the hospital when her son Billy was there pursuant to a motorcycle accident. Mrs. Battelli also noted that she had not seen Morelli at the Boar's Head Inn.

Deloris Ross testified that she knew deceased for 35 to 40 years. She remembered no occasion upon which decedent acknowledged Morelli as decedent's son. She did indicate that decedent had referred to her son as his child when interceding on her child's behalf before the Maywood Police Department.

Louis Boulahanis testified that he knew decedent for 32 years. He stated that decedent gave Boulahanis' son a bicycle on his seventh birthday. Deceased referred to Boulahanis' son, John, as decedent's son.

Jo Lynn Lawrence, the niece of decedent, testified that decedent employed her as a bartender and cook at the Boar's Head Inn. She stated that boys were not employed as bartenders at that establishment. Lawrence further indicated that during her period of employment (November 1973-January 1976) Morelli was never employed in any capacity at the Boar's Head Inn.

Joseph Battelli, the son of decedent and Violet Battelli, testified that he met Morelli at the Boar's Head Inn. Morelli was not employed there on the day they met. Battelli testified that he never saw Morelli working in any capacity at the Boar's Head Inn. Battelli stated that on one occasion at the Boar's Head Inn Morelli indicated that he was Battelli's brother. Battelli did not attempt to verify the allegation.

Ronald Fabiani, the brother of Violet Battelli, testified that in 1969 he and decedent entered into a business partnership. They operated the Casa Madrid tavern.

Fabiani then referred to a conversation at which he, George Rizzio, Peter Gorny and decedent were present. The exchange between counsel and Fabiani was as follows:

"Q. Was Rick Morelli mentioned in the conversation?

A. Yes, it was brought up by Peter Gorny, Pete, known as Rabbit.

Q. What did he say?

A. He brought up the possibility of Lefty kiddingly having said, 'Do you have any illegitimate children?'

Q. What else was said?

A. Well, we were joking around, I said, 'I have about 20 myself' and Lefty said, 'I fostered many children in the past, calling them my sons, which today, I wish, I never had, because—' He says he has helped too many people in the past."

Carolyn Richardson testified that she had been employed by decedent and that decedent was a friend of her husband. She stated that decedent introduced Morelli to her as his son. Deceased allegedly told Richardson to teach Morelli how to tend bar. Richardson also testified that Morelli cooked, cleaned, tended bar and acted as a bouncer at the Boar's Head Inn. She also testified that Linda Hansen was hateful toward Morelli.

George Collura testified that he met decedent in 1947. Collura spent much time at the Boar's Head Inn and had seen Morelli cleaning the premises and pushing handtrucks containing cases of beer. Collura stated that decedent never introduced Morelli to Collura as deceased's son.

Although Morelli, as an illegitimate, would be entitled to inherit from his father who died intestate (see *Trimble v. Gordon* (1977), 430 U.S. 762, 52 L. Ed. 2d 31, 97 S. Ct. 1459), such entitlement is based upon paternity which is to be proven, as aforementioned, by clear and convincing evidence. Upon hearing the testimony the trial court found that Morelli had not met his burden of proof. It was, of course, the province of the trial court to consider all the details and conflicts, to listen to the witnesses and determine their credibility and draw inferences and conclusions from the evidence presented. *In re Estate of Drisch* (1969), 112 Ill. App. 2d 242, 250 N.E.2d 513.

We, upon our review of the evidence, have not found the facts unsupportive of the trial court's judgment. Accordingly, the judgment of the circuit court of Cook County finding that Morelli was not the illegitimate son of Alphonse J. Battelli, decedent, is affirmed.

Affirmed.

PERLIN and HARTMAN, JJ., concur.