Edmund ALLEN, Gerome Allen and
Henri Allen, by Geraldine Allen,
their mother and next friend, Plaintiffs,

v.

Otis R. BOWEN, Secretary of Health
and Human Services, Defendant.

No. 85 C 8031.

United States District Court,
N.D. Illinois, E.D.

March 10, 1987.

Reconsideration Denied June 8, 1987.

Jean Goodwin, Englewood Office, Legal Assistance Foundation of Chicago, Chicago, Ill., for plaintiffs.

James P. White, Asst. U.S. Atty., Michael T. Lamb, Asst. Regional Counsel, Region V, U.S. Dept. of Health and Human Services, Chicago, Ill., for defendant.

## MEMORANDUM AND ORDER

MORAN, District Judge.

Henri, Gerome and Edmund Allen, by their mother and next friend Geraldine Allen, seek Social Security child's insurance benefits under 42 U.S.C. § 402(d) on the wage record of the late Henry Ellis. They appeal from the Secretary's determination that they have not sufficiently proven their status as Henry's children under either 42 U.S.C. §§ 416(h)(2)(A) or 416(h)(3)(C)(ii). They ask for reversal and an award of benefits. The Secretary admits that the administrative law judge (ALJ) erroneously imposed a burden of clear and convincing proof on claimants for the determination under § 416(h)(3)(C)(ii) and moves to remand that portion of the claim for reconsideration. However, the Secretary moves for summary judgment on the portion under § 416(h)(2)(A).

Since the ALJ made two additional errors of law which affect both portions of the claim, this court's only alternative is to reverse both portions. However, a remand for reconsideration proves to be unnecessary. The proper burden of proof under § 416(h)(3)(C)(ii) is a preponderance of the evidence. Since the ALJ implicitly concluded that claimants had shown by a preponderance of the evidence the elements necessary under that section to establish child status, and since the contrary conclusion on this record could not be supported by substantial evidence, we direct an award of benefits.

## BACKGROUND

■ A claimant may establish status as a child of a wage earner through either of two alternative routes. He may show that he would take as a child under the law of intestate succession of the state in which the wage earner was domiciled, § 416(h)(2)(A) (the "state law alternative"), or he may demonstrate "by evidence satisfactory to the Secretary" that the wage earner was his father or mother and that the wage earner either lived with him or contributed to his support, § 416(h)(3)(C)(ii) (the "federal alternative"). *See generally Schaefer v. Heckler*, 792 F.2d 81 (7th Cir. 1986).

At least seventeen persons claim to be a son or daughter of Henry Ellis, although fortunately not all of them are seeking child's benefits before this court. Eight of these persons are children by his widow Nellie. Two of these, Shaun and Alonda Ellis, currently receive child insurance benefits through their father as wage earner.[1] Though Henry and Nellie had lived apart for quite some time before his death, they were never divorced. He apparently had another six children by Martha Gates, with whom he cohabited from about 1956 to 1966. One of these children, Sylvester Gates, testified on claimants' behalf at their hearing.

The instant case concerns the nature and extent of Henry's relationship with Geraldine (neé Epperson) Allen and her three children. She states, and considerable evidence corroborates her statement, that they met in 1973 while she was still married to but separated from Isaac Allen, and

---

1. Nellie Ellis, on behalf of herself, Shaun and Alonda, intervened to oppose the instant claim at the hearing stage. She also petitioned to intervene in the proceedings before this court, which petition was granted on November 20, 1986. However, her brief, due on December 5, 1986, was never filed.

that she and Henry lived together from 1974 until his death in 1982. She did not divorce Isaac Allen until 1979, but the divorce decree expressly states that no children were born to the marriage. Isaac Allen has also testified by affidavit that he and Geraldine had no children. Henri, Gerome and Edmund Allen were born in August 1974, January 1977 and December 1977, respectively. No father is listed on their birth certificates. Geraldine says they are Henry's sons. Henri and Gerome both testified at the hearing, each saying that Henry Ellis was his father, who lived with them and who they called "Daddy." The ALJ believed, however, that the Illinois Dead Man's Act, Ill.Rev.Stat. ch. 110, ¶ 8–201, required him to disregard most of their and their mother's testimony.

Henry Ellis' sisters Evelyn Ellis and Elizabeth Miller, brother Clinton Ellis, son Sylvester Gates and niece Shirley Miller also all testified that Henry and Geraldine lived together; that Henry repeatedly, consistently and constantly acknowledged and treated Henri, Gerome and Edmund as his sons; and that he contributed food and clothing to the boys, and various items to the household. Henry's obituary, apparently approved by his sisters and his widow, and distributed at the mortuary for his funeral, listed Henri, Gerome and Edmund as his sons (R. 523). The proportion of Henry's income which went to the support of these three boys could not be established, but only because Henry's income after about 1975 could not be established. Henry was employed at Sondag Chevrolet in Des Plaines, Illinois, from about 1966 to 1973 or 1974. After he was laid off from that job, he never held another. However, he seems to have supported himself in part by buying used cars and reselling them in the neighborhood of Roosevelt and Kedzie, and in part by gambling.

Geraldine has received Aid to Families with Dependent Children (AFDC) benefits since the birth of Henri. She testified that when she first applied, she invented the name "Antoine Sims" to list as Henri's father for fear that the agency would pursue Henry in court for child support. She nevertheless named the boy to strongly suggest his father's name (Henri Burchion Allen from Henry Burch Ellis). By 1981 her fear had abated sufficiently so that she listed Henry as the father of Gerome and Edmund with the AFDC, and by 1983 corrected the entry for Henri. Nevertheless, believing that she would lose her AFDC benefits if she admitted that Henry was living with and partially supporting them, she consistently reported to the agency that she did not know his whereabouts. Actually, she said, Henry lived with them and contributed money ($50 to $100 per month), food, clothing and other items regularly. Henry did not apply for public aid himself until about three months before his death, after he had fallen ill. According to Geraldine, he then listed an address of a friend as his address, to avoid jeopardizing her benefits.

In a lengthy opinion the ALJ held that Henri, Gerome and Edmund had failed to meet the burden of proof necessary to establish that they are the sons of Henry Ellis. Against the testimony of Geraldine, Henri and Edmund Allen, Evelyn and Clinton Ellis, Elizabeth and Shirley Miller, and Sylvester Gates, the ALJ noted that AFDC and Chicago Housing Authority records indicated that Henry Ellis did not live with Geraldine Allen, that Geraldine's public aid caseworker testified that he believed Geraldine when she said that no man was living with her, and that Nellie Ellis, Henry's widow, had submitted a statement to the Social Security Administration which said:

> My husband had no other children under the age of 18. I believe this is so ... I don't trust my husband's family. They never tell the truth ...

(R. 526). The ALJ also thought that Nellie Ellis had said that Henry did not live with Geraldine (R. 24); in fact, her statement includes no comment about where Henry resided after they parted.

The ALJ's route to his holding is difficult to follow. Some portions of the opinion indicate that he believed that Henry Ellis was the father of the claimants and lived with Geraldine Allen (e.g., R. 17, 18). Notably, he specifically concluded (R. 11) that both Geraldine and Henry had deceived the

Illinois Department of Public Aid and given fraudulent information to both that agency and the Chicago Housing Authority. He repeatedly castigated them for this deceit (R. 11, 20, 24), and further discounted most of Geraldine's testimony because he doubted her credibility (R. 24).

Nevertheless, he held that plaintiffs had not made their case. The apparent contradiction may be explained by his evidentiary rulings, which gave the claimants a distinctly uphill battle. As noted above, he barred some testimony from Henri, Gerome and Geraldine under the Dead Man's Act (R. 14–15, 23). He also ruled that each step of their claim required "clear and convincing" proof: clear and convincing evidence to overcome the presumption that the children were Isaac Allen's because they were born while Geraldine was still legally married to him (R. 10, 21); clear and convincing evidence of the competency of any interested party, as defined by the Dead Man's Act (R. 16); clear and convincing evidence of heirship, not only to satisfy the Illinois law method of proof under § 416(h)(2)(A) (R. 21) but also the standard for the federal alternative method of proof under § 416(h)(3)(C)(ii) (R. 22, 25); clear and convincing evidence again to establish either that Henry was living with the children or supporting them, for purposes of the federal alternative (R. 24, 25).

Moreover, he defined a clear and convincing burden of proof as proof beyond a reasonable doubt (R. 16, 23, 24). He may have thought that that level of proof required a written acknowledgment of paternity. In any case, his only conclusion directly relating to proof of paternity is that claimants failed to show by clear and convincing evidence that a deathbed acknowledgment of paternity which they introduced actually came freely and knowingly from Henry Ellis (R. 24). (Claimants on appeal do not challenge the decision to reject that document.) He also held that claimants had failed to meet their burden of proof either that Henry had lived with them (R. 24) or adequately supported them (R. 24–25). On the latter, he found a reasonable doubt whether claimants had proved that Henry's income was low enough to make the small contributions which the ALJ apparently believed that Henry made an acceptable level of support out of that income (R. 24).

## DISCUSSION

This court's review of a Social Security child benefits decision, like its review of a disability decision, is limited. As to findings of fact, we seek only to determine whether they are supported by substantial evidence in the record as a whole. *Schaefer*, 792 F.2d at 84. Errors of law, however, require reversal. *Id.*

Here the Secretary admits one error of law. For the federal alternative method of proving child status, the ALJ required clear and convincing evidence of each element. As the Seventh Circuit has recently pointed out, if the same burden of proof applies to both the state law alternative, which consists of proof of heirship alone, and to the federal alternative, which requires proof of both heirship and either living with the wage earner or support from him, then the federal alternative "serves no function whatsoever." *Imani v. Heckler*, 797 F.2d 508, 512 n. 3 (7th Cir.), *cert. denied,* — U.S. —, 107 S.Ct. 580, 93 L.Ed.2d 583 (1986).

■ Instead, Congress intended to provide a true alternative. Persons who could not prove a single element, heirship, clearly and convincingly, could nevertheless succeed with lesser evidence of that one element, plus evidence on an additional element: either living together or support. *Id.; see also Cruz v. Gardner*, 375 F.2d 453, 457 (7th Cir.), *cert. denied,* 389 U.S. 886, 88 S.Ct. 160, 16 L.Ed.2d 184 (1967) (claimant unable to establish heirship on state law standard nevertheless wins benefits under federal alternative). Though the *Imani* court did not expressly identify the burden of proof for the federal alternative, the next level down from "clear and convincing" evidence is "by a preponderance of the evidence." *See, e.g., Santosky v. Kramer*, 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982); *Kaszuk v. Bakery and Confectionery Union*, 638 F.Supp. 365, 373

(N.D.Ill.1985). Since a "clear and convincing" standard is required for the single-element state law alternative of § 416(h)(2)(A), and a lesser burden of proof applies to the federal alternative, § 416(h)(3)(C)(ii), we conclude that a preponderance of the evidence on both elements of the federal alternative satisfies § 416(h)(3)(C)(ii). As the Secretary admits, the ALJ erred by setting the burden of proof too high on this portion of the claim, and we must reverse.

■ The Secretary's motions, however, will not dispose of this claim. The Secretary also moves for summary judgment affirming the ALJ on the state law alternative. But the ALJ made two additional errors of law which affect the state law alternative portion of the claim as well as the federal portion. While he correctly labeled the Illinois standard for proving heirship as "clear and convincing evidence," he incorrectly decided that there was no difference between "clear and convincing" proof and proof "beyond a reasonable doubt." While "clear and convincing" is a demanding standard, it is not that exacting. Proof beyond a reasonable doubt is proof that a fact is almost certainly true, while clear and convincing evidence means simply proof that a fact is highly probable. *Kaszuk*, 638 F.Supp. at 384; *Estate of Ragen*, 79 Ill.App.3d 8, 14, 398 N.E.2d 198, 203, 34 Ill.Dec. 523, 528 (1st Dist.1979). Thus, in an heirship proceeding, the standard can be satisfied without a written acknowledgment of paternity, *Cooper v. Harris*, 499 F.Supp. 266, 268 (N.D.Ill.1980), and despite some inconsistencies in the record. *Cody v. Johnson*, 92 Ill.App.3d 208, 212, 415 N.E.2d 1131, 1134, 47 Ill.Dec. 818, 821 (1st Dist.1980). Here the ALJ apparently demanded a written acknowledgment, and seems to have found the existence of some inconsistent evidence enough to defeat the claim.

■ Moreover, the ALJ struck some testimony on the ground of the Dead Man's Act. However, Ill.Rev.Stat. ch. 110, ¶ 8–201(d) expressly states: "No person shall be barred from testifying as to any fact relating to the heirship of a decedent."

The ALJ apparently concluded that when the legislature added this portion of the statute in 1973 it did not intend to make a substantive change in the law (R. 17). Thus he relied on pre–1973 cases for his analysis of what testimony should be stricken (R. 16).

■ In fact, the amendment worked a sweeping change, making testimony which might relate even tangentially to proof of heirship regularly admissible, even in contested proceedings. *See Estate of Hutchins*, 120 Ill.App.3d 1084, 1087, 458 N.E.2d 1356, 1358, 76 Ill.Dec. 556, 558 (4th Dist. 1984); *Estate of Bailey*, 97 Ill.App.3d 781, 783–784, 423 N.E.2d 488, 490–491, 53 Ill. Dec. 104, 106–107 (5th Dist.1981); *Kennedy v. Kennedy*, 93 Ill.App.3d 88, 92, 416 N.E.2d 1188, 1190, 48 Ill.Dec. 666, 668 (1st Dist.1981). None of these cases call for the "clear and convincing evidence of competency" the ALJ thought was necessary (R. 16). Thus, for example, testimony by the child or the mother about financial support, trips together, birthday cards and gifts, and attendance at birthdays is admissible because it relates to heirship. *Hutchins*, 120 Ill.App.3d at 1088, 458 N.E.2d at 1358–1359, 76 Ill.Dec. at 558–559; *Morelli v. Battelli*, 68 Ill.App.3d 410, 413–414, 386 N.E.2d 328, 330, 25 Ill.Dec. 57, 59 (1st Dist.1979). The ALJ did not specify precisely which testimony he struck, but it would appear that quite a bit should have been considered that was not. Thus we cannot grant the Secretary summary judgment on the state law alternative portion of the claim. The decision does not rest on solid legal ground and must be reversed.

■ Ordinarily our next step would be to remand the entire proceeding back to the Secretary for application of the correct legal standards to the fact-finding process. However, when the administrative record runs to 1,095 pages, and stands 5 inches thick, one is reluctant to order the parties to do it all over again. Fortunately, in this case that will not be necessary. We have determined that the proper standard to apply for the federal alternative under § 416(h)(3)(C)(ii) is proof by a preponderance of the evidence. The ALJ here implic-

itly found that the claimants had established both their paternity and that Henry Ellis lived with them by a preponderance of the evidence, which is all they need to show under the federal alternative.

It is true that the ALJ did not make a clear finding to that effect in so many words (*but see* R. 11, 17, 18, 20, 24). He did, however, expressly conclude that Geraldine Allen and Henry Ellis had deceived government agencies (R. 11). Since the information they gave to those agencies initially denied paternity and continuously denied living together, their acts can only constitute deceit if Henry Ellis was the father of Henri, Gerome and Edmund and lived with them and Geraldine. "Hence, it is clear that, unless we impute an element of undeterminable, and thus unreviewable, irrationality to the administrative decision-making process, the ALJ must have [so found] ... although he did not expressly so state in his order." *Imani*, 797 F.2d at 511. Moreover, the ALJ carefully concluded for each element only that claimants had not met a clear and convincing standard of proof. The ALJ's opinion as a whole makes sense only if he found that claimants had shown paternity and living together by a preponderance of the evidence, but that their proof fell short of being clear and convincing.

It is also difficult to see how any other conclusion could on this record be supported by substantial evidence. An ALJ "cannot select only that evidence which supports his conclusion and ignore the rest. The evidence supporting the decision must still be substantial when all the evidence is weighed." *McGee v. Bowen*, 647 F.Supp. 1238, 1246 (N.D.Ill.1986), *citing Taylor v. Schweiker*, 739 F.2d 1240, 1243 (7th Cir. 1984). Here eight witnesses (and, in effect, the obituary as well) testified to the same essential facts: that Henry Ellis fathered, acknowledged his paternity of, lived with and at least occasionally supported Henri, Gerome and Edmund. The presumption that Isaac Allen was their father because they were born to Geraldine Allen while she was legally married to him is rebuttable. *See McMillian v. Heckler*, 759 F.2d 1147, 1153 (4th Cir.1985). Under Illinois law it is convincingly rebutted by the combination of their eventual divorce decree, which expressly denied the existence of any children from the marriage, and Isaac's testimony. *See Hutchins*, 120 Ill.App.3d at 1089, 458 N.E.2d at 1359, 76 Ill.Dec. at 559 (holding same presumption rebutted on similar evidence).

Thus only three things are left to support the conclusion that the boys were not the sons of and did not live with Henry: the belief of Nellie Ellis, who as one of the women Henry left was not likely to be in the best position to know, that he had no other children under 18; documents listing separate residences, which are explained by Geraldine's desire to keep her AFDC benefits; and the conviction of a harried caseworker that no man lived with Geraldine. The ALJ's reliance on Nellie's testimony did not involve a credibility determination, since only a writing was before him. (Nellie was present at the hearing, but did not testify.) While the testimony of interested parties such as Geraldine, Henri and Gerome is to be taken guardedly, here it was fully corroborated by Henry's brother, sisters, niece, and even another illegitimate son, all of whose personal interests are hard to see. However irresponsible Geraldine and Henry were, one must also guard against visiting "condemnation of an irresponsible liaison beyond the bonds of marriage ... on the head of an infant." *Jimenez v. Weinberger*, 417 U.S. 628, 632, 94 S.Ct. 2496, 2499, 41 L.Ed.2d 363 (1974) (construing former § 416(h)(3)(B)), *quoting Weber v. Aetna Casualty & Surety Co.*, 406 U.S. 164, 175, 92 S.Ct. 1400, 1406, 31 L.Ed.2d 768 (1972). The evidence against claimants may be enough to prevent them from making a clear and convincing showing, but it is too thin to block them from a preponderance. It follows that claimants established by a preponderance of the evidence, as the ALJ implicitly found, that they are the sons of and lived with Henry Ellis. They are entitled to child's insurance benefits.

## CONCLUSION

Defendant's motions for partial summary judgment and remand are denied. Plain-

tiffs' motion for summary judgment is granted. The decision of the Secretary is reversed, benefits are awarded, and the case is remanded for a calculation of those benefits.