**Rebecca KINNEY, on Behalf of Karlton R. KINNEY, Plaintiff,**

v.

**Louis SULLIVAN, Secretary of Health and Human Services.**

**No. CIV–89–1357–A.**

United States District Court, W.D. Oklahoma.

July 16, 1990.

**1068**

Margie K. Balentine, Yukon, Okl., for plaintiff.

Timothy D. Leonard, U.S. Atty., Vicki Zemp Behenna, Asst. U.S. Atty., Oklahoma City, Okl., for defendant.

## MEMORANDUM OPINION

ALLEY, District Judge.

Plaintiff has brought this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Defendant Secretary of Health and Human Services (hereinafter referred to as the Secretary), denying her claim for child's insurance benefits under 42 U.S.C. § 402(d).

Plaintiff filed an application for child's insurance benefits on behalf of her son Karlton R. Kinney (hereinafter referred to as Karlton), on June 25, 1987 based upon the earnings record of one McNelious Jones, Jr., deceased, the alleged natural father of Karlton. (TR-42). The application was denied on initial consideration at the administrative level. (TR-48). The Plaintiff did not receive the original notice denying her claim, so the Social Security Administration (hereinafter referred to as SSA) sent her a duplicative notice on January 12, 1988. (The record shows the notice was mailed January 12, *1987*, although presumably this date is in error.) (TR-54). On April 23, 1988, the Plaintiff filed a second application for child's insurance benefits on behalf of Karlton (TR-49). This application was treated by the SSA as a request for reconsideration of its denial of the first application, (TR-54), and the claim was denied on reconsideration. (TR-55, 56). Plaintiff then filed another request for reconsideration as well as a request for a hearing before an administrative law judge (hereinafter referred to as ALJ). (TR-59, 62). Since the Plaintiff requested a hearing before an ALJ, the SSA took no action on the second request for reconsideration. (TR-64). Pursuant to the Plaintiff's request, a hearing *de novo* was held on October 21, 1988 before an ALJ. (TR-18). The Plaintiff appeared with counsel and offered her testimony, as well as the testimony of Karlton and Karlton's alleged grandmother, Pearline Jones, the mother of Mr. Jones. (TR-20). On January 31, 1989, the ALJ issued his decision finding that Karlton was not the child of Mr. Jones within the meaning of the Social Security Act and was therefore not entitled to surviving child's benefits on Mr. Jones' earnings record. (TR-6, 7-12). On June 8, 1989, the Appeals Council denied the Plaintiff's request for review of the ALJ's decision, and the decision of the ALJ became the final decision of the Defendant Secretary. (TR-2).

In her brief, the Plaintiff states that the facts are uncontroverted and are well-stated by the ALJ. (See Plaintiff's memorandum of law filed December 1, 1989, pg 3). The facts as found by the ALJ are as follows:

Evidence of record establishes that Rebecca Lewis (the Plaintiff) and Dale Eugene Kinney were married in 1962 or 1963, and subsequently separated in 1965, but were never divorced. A birth certificate of record shows that Karlton R. Kinney was born on September 20, 1970 to Rebecca and Dale Eugene Kinney (Ex. 11). However Rebecca Kinney maintains that Karlton R. Kinney is not the natural child of Dale Eugene Kinney, but is the child of McNelious Jones, Jr. McNelious Jones, Jr. died on June 1, 1987, in Oklahoma City, Oklahoma. Evidence of record shows that Rebecca Kinney has not seen Dale Eugene Kinney since at least 1967, and that although the marriage between Rebecca and Dale Kinney has never been dissolved, Mr. Kinney was in Korea during the period of November 1969 to February 1970, which would be the time frame during which Karlton Kinney would have been conceived. Consequently, Dale Eugene Kinney cannot be found to be the natural biological father of Karlton R. Kinney. The question, then, is can McNelious Jones, Jr. be determined to be the father of Karlton R. Kinney? ...

The record clearly shows that Rebecca Kinney and McNelious Jones, Jr. never intermarried prior to his death. The record also clearly shows that Mr. Jones

never reduced to writing his acknowledgement of Karlton Kinney as his child in the presence of competent witnesses or otherwise. There has not been any paternity proceeding before a court of competent jurisdiction in which Mr. Jones has been judicially determined to be Karlton Kinney's father. The only question that remains then, is whether Karlton Kinney qualifies as a surviving child of McNelious Jones, on the basis that Mr. Jones publicly acknowledged the child as his own and received it as such into his family and otherwise treated it as his legitimate child.

Evidence of record and testimony established that Mr. Jones was a drifter who considered his mother's home as his permanent residence, and that is where he always kept some of his personal belongings. The evidence in this case also clearly establishes that Mr. Jones' mother, Pearline Jones, accepted her son's oral acknowledgement of Karlton Kinney as his son and made appropriate gestures towards receiving the child into the family, as evidenced by her helping Rebecca Kinney financially with raising the child; her having the child in her home on weekends from time to time, and occasionally babysitting with the child; and her including the child in her family holiday celebrations. However, there is no clear and convincing evidence that Mr. Jones, himself, as a single person, ever took the responsibility or made any gestures that would constitute receiving the child, Karlton Kinney, into his family beyond the oral acknowledgement that the child was his. Testimony and statements of record show that Mr. Jones went from place to place frequently and was seldom physically in Mrs. Jones' home. There is no evidence that Mr. Jones ever personally made arrangements to have Karlton Kinney in his mother's home when he was there himself, or that he made any efforts to establish a family-type relationship with the child, as evidenced by written statements of record which state, 'he never did nothing for the baby' (Ex. 15); and by a statement from Mr. Jones' mother wherein she said, 'he never took

the child into his home, and never supported him as far as I know' (Ex. 14). Karlton Kinney himself, offered testimony at the hearing to the effect that he only saw Mr. Jones 4 times in the last 10 years of his life.

Mrs. Jones testified that she included Karlton Kinney in family holidays and that Mr. Jones would take odd jobs to help buy food for family celebrations. However, there is no showing that Mr. Jones made any personal gestures to include Karlton in the holiday celebrations, or that his taking odd jobs for money to buy food for the family celebrations had any direct connection with Karlton being included in the holiday or family celebrations. Rather, it appears that Mr. Jones' efforts to contribute money for food for the family celebration was for the rather large family in general. In fact, there is no evidence of record to convincingly show that Mr. Jones demonstrated any sense of responsibility whatsoever toward Rebecca Kinney as a mother of a child that he orally acknowledged as his, or towards Karlton Kinney himself. While Mrs. Pearline Jones' efforts towards accepting Karlton Kinney into her family as one of her grandchildren, are commendable, her actions and efforts cannot be construed as constituting actions of her son, McNelious Jones ... (TR–8–10)

The Social Security Act provides several ways by which a child born out of wedlock can show that he/she is a child of a deceased wage earner, in order to establish eligibility for surviving child's benefits. See 42 U.S.C. § 416(h). Here, the Plaintiff bases her claim on the assertion that Karlton would be entitled to a share of Mr. Jones' personal property under the Oklahoma laws of intestate succession. 42 U.S.C. § 416(h)(2)(A). The parties agree that Oklahoma law controls this determination. 42 U.S.C. § 416(h)(2)(A); 20 C.F.R. § 404.354.

Under Oklahoma law, a child born out of wedlock is entitled to inherit from the father whenever (a) the father, in writing, signed in the presence of a competent wit-

ness, acknowledges himself to be the father of the child or (b) the father and mother intermarried subsequent to the child's birth and the father, after such marriage, acknowledged the child as his own or adopted the child into the father's family or (c) the father publicly acknowledged the child as his own, receiving the child as such into his family and otherwise treating the child as if he/she was a child born in wedlock or (d) the father was judicially determined to be such in a paternity proceeding before a court of competent jurisdiction. 84 Okla.Stat. § 215. It is undisputed that Karlton does not meet the provisions of subparagraphs (a), (b) or (d) above, and thus the only issue before the ALJ was whether the requirements of subparagraph (c) were satisfied.

In order to satisfy the requirements of subsection (c), a claimant must show (1) public acknowledgement by the alleged father, (2) receiving the child into his family, and (3) otherwise treating the child as if it were his own. 84 Okla.Stat. § 215; *see also, Matter of Swarer,* 566 P.2d 126, 128 (Okla.1977) (interpreting essentially this same statutory provision when it was found in 10 Okla.Stat. § 55, relating to constructive adoption of children born out of wedlock); *In re Gathings' Estate,* 199 Okl. 460, 187 P.2d 981, 983 (1947). The questions of reception into the family and treatment as if the child were his own are so interrelated, they may be considered together. *In re Gathings' Estate, Id.* The ALJ found that the public acknowledgement requirement was satisfied, but he did not find the evidence sufficient to show that Mr. Jones received Karlton into his family or otherwise treated Karlton as his own child. (TR–10). The sole issue raised

by the Plaintiff on appeal is whether this conclusion of law is supported by substantial evidence. (See Plaintiff's memorandum of law, pg. 5).[1]

In reviewing a decision of the Secretary, this Court is limited to a determination of whether or not the decision is supported by substantial evidence. 42 U.S.C. § 405(g); *Richardson v. Perales,* 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971); *Brown v. Bowen,* 801 F.2d 361, 362 (10th Cir.1986). Substantial evidence is defined as more than a scintilla and is such evidence as a reasonable mind might deem adequate to support a conclusion. *Richardson v. Perales,* 402 U.S. at 401, 91 S.Ct. at 1427; *Fowler v. Bowen,* 876 F.2d 1451, 1453 (10th Cir.1989); *Brown v. Bowen,* 801 F.2d at 362. The Court is not to weigh the evidence nor substitute its discretion for that of the Secretary. *Descheenie on Behalf of Descheenie v. Bowen,* 850 F.2d 624, 627 (10th Cir.1988). If the evidence is such as to present varying inferences, in order for the Court to disturb the ALJ's findings, the Court would have to engage in fact finding, which it should not do. *Tillery v. Schweiker,* 713 F.2d 601, 603 (10th Cir.1983). With these standards in mind, the Court will conduct its review of the Secretary's decision.

As noted, the Plaintiff contends that the ALJ erroneously concluded that Mr. Jones did not accept Karlton into his family. Plaintiff states that even though Mr. Jones did not maintain a home and family in the traditional sense, he did receive Karlton into his family as best he could under the circumstances. The Court agrees that whether or not Mr. Jones received Karlton into his family and treated him as if he

---

**1.** The ALJ found that there was no "clear and convincing evidence" to show that Mr. Jones had received Karlton into his family. (TR–9). The Plaintiff does not challenge this burden of proof, so the Court need not address the issue, although no Oklahoma case was found setting forth this heightened burden of proof. *See however, Imani on Behalf of Hayes v. Heckler,* 797 F.2d 508, 511 (7th Cir.1986), *cert. denied,* 479 U.S. 988, 107 S.Ct. 580, 93 L.Ed.2d 583 (1986) (Missouri law of intestate succession requires that after the death of the putative father, paternity must be established by clear and con-

vincing evidence); *Kelani v. Bowen,* 684 F.Supp. 490, 496 (M.D.Tenn.1988) (Tennessee statute requires clear and convincing evidence to establish paternity by a child born out of wedlock who seeks to inherit from the putative father); *Allen v. Bowen,* 657 F.Supp. 148, 152 (N.D.Ill. 1987) (clear and convincing proof required under Illinois law to establish the right to inherit under the laws of intestate succession). *See also, Byers v. Byers,* 618 P.2d 930, 932 (Okla. 1980) (equitable adoption must be shown by clear and convincing proof); *Crozier v. Cohen,* 299 F.Supp. 563, 565 (W.D.Okla.1969) (same).

were his son, should be viewed in Mr. Jones' circumstances and not in the traditional sense of "family." *See In re Estate of LaSarge*, 526 P.2d 930, 933 (Okla.1974); *see also, In re Gathings' Estate*, 187 P.2d at 983–984. ("Family" refers more to the relationship between the parties than their congregation at a given place.) Here, the evidence clearly shows that Mr. Jones was a drifter, and, as the ALJ found and as the parties agree, Mr. Jones considered his permanent home to be with his mother. Thus, Mr. Jones' actions will be viewed in this light in determining whether the ALJ's conclusion is supported by substantial evidence.

As noted, the Plaintiff agrees that the facts found by the ALJ are well-stated and uncontroverted. The ALJ found that Mr. Jones never personally made arrangements to have Karlton in Mr. Jones' mother's house when Mr. Jones was there, or made any effort to establish a family-type relationship with Karlton. (TR–10). Mr. Jones never did anything for Karlton, never took him into his home or supported him. (TR–10). Karlton testified that Mr. Jones only came by to see him about four times in the last ten years of Mr. Jones' life. (TR–10, 39). Even then, it appears that Karlton saw Mr. Jones only "by chance," despite the fact that Mr. Jones' mother only lived a few houses away from the Plaintiff and Karlton. (TR–26, 37–38). The Plaintiff and Karlton testified that when Mr. Jones was in town, he stayed with his mother and not with them. (TR–30, 38–39). Karlton never lived with Mr. Jones. (TR–47). Thus, there is sufficient evidence to support the ALJ's conclusion that Mr. Jones never "received" Karlton into his family or otherwise treated Karlton as if he were his own. Since the Plaintiff agrees that public acknowledgement alone is not sufficient for Karlton to inherit from Mr. Jones under the Oklahoma laws of intestate succession, the ALJ's decision must be upheld.

The Court, having reviewed the evidence of record, the transcript of the administrative hearing, the decision of the ALJ and the pleadings and briefs of the parties finds that the decision of the Defendant Secretary is based upon substantial evidence and must be affirmed. Based upon these findings, the final decision of the Defendant Secretary should be affirmed and a judgment of affirmance will be entered this day.

This opinion was prepared with the assistance of United States Magistrate Doyle W. Argo.

IT IS SO ORDERED.