891 F.2d 185
 28 Soc.Sec.Rep.Ser. 31, Unempl.Ins.Rep. (CCH) P 15207A
Theresa PARKER, for Anthony LAMON, Plaintiff-Appellant,
v.
Louis W. SULLIVAN, M.D., Secretary of Health and Human
Services, Defendant-Appellee.
 No. 89-1127.
 United States Court of Appeals,
Seventh Circuit.
 Argued Nov. 7, 1989.
Decided Dec. 13, 1989.
As Amended Dec. 28, 1989.
 
 Thomas M. Henry (argued), Peoria, Ill., for plaintiff-appellant.
 K. Tate Chambers, Asst. U.S. Atty., Office of the U.S. Atty., Peoria, Ill., Ted K. Yasuda, Gen. Counsel (argued), Dept. of Health and Human Services, Office of the General Counsel, Chicago, Ill., for defendant-appellee.
 Before WOOD, Jr., COFFEY and EASTERBROOK, Circuit Judges.
 PER CURIAM.
 
 
 1
 The question presented in this appeal is whether the district court erred in affirming the decision of the Secretary of the Department of Health and Human Services ("Department") denying Anthony E. Lamon surviving child's benefits under the Social Security Act. We affirm the judgment of the district court.
 
 I.
 
 2
 Theresa E. Parker first filed an Application for Surviving Child's Insurance Benefits with the Department on July 26, 1979, on behalf of her son Anthony and her daughter Alicia R. Lamon. Parker claimed that both Anthony and Alicia were the children of Gregory Sargent, the deceased wage earner, who died insured on June 8, 1979. The Department denied Parker's request on March 19, 1980. On July 31, 1984, Parker reapplied for benefits on behalf of Anthony, but not Alicia, who is a severely handicapped child now under the care of the state. The Department rejected this application on August 6, 1984 since Parker had failed to submit any new evidence. On August 16, 1984, Parker filed a "Request for Reconsideration", which the Department denied on November 9, 1984. In response to Parker's timely request, a hearing was held before an Administrative Law Judge ("ALJ") on October 29, 1985. Parker, who was represented by counsel, appeared and testified in support of her claim. Danny Gordon, Parker's brother-in-law and Sargent's friend, also testified. The evidence introduced at the hearing can be outlined as follows:
 
 
 3
 Parker was a freshman in high school and Sargent was a senior when they began dating in September of 1969. By January of 1970, Parker and Sargent had begun to have sexual relations, which continued when Sargent enrolled at Illinois State University at Normal ("ISU") in the fall of 1970. Until July of 1971, Parker had sexual relations only with Sargent, and in October of that year a doctor confirmed that she was six months pregnant. When Parker told Sargent of the pregnancy, they agreed that they were too young to be married and planned instead on marrying after Parker graduated from high school, which would roughly coincide with Sargent's graduation from college.
 
 
 4
 Parker told her parents about the pregnancy in November of 1971. They refused to let Sargent see their daughter, and hostilities broke out between Parker's and Sargent's mothers. Anthony Lamon was born on January 15, 1972, while Parker was still living at home. Parker's mother refused to let Sargent's name be placed on the birth certificate.
 
 
 5
 Because Parker was on public aid, the State required that she file a state court action against Sargent to establish paternity and child support. A warrant was issued on Sargent, and his family hired an attorney to contest the action. On July 20, 1973, the trial court entered an order showing that Sargent, through his attorney, posted a bond and requested a continuance for trial. No further hearing was held on the case. There are various reasons in the record regarding why the paternity suit was not prosecuted. Parker stated that she never wanted to bring suit in the first place and only did so due to pressure from Public Aid and her mother. According to the Attorney General of Illinois' office, the suit was not prosecuted due to bureaucratic mishandling on the part of Public Aid. Also, Sargent orally agreed to begin making support payments after he graduated from college. This agreement is confirmed by a notation on a Public Aid form dated August 13, 1974 which states: "Mr Sargent agreed to pay support after he graduated from ISU in May, 1974. To date he has not paid any. He is getting married August 10, 1974."
 
 
 6
 In September of 1973, Parker enrolled at ISU and moved to Normal. At approximately the same time, Sargent and Parker had sexual relations and she became pregnant a second time. Parker and Sargent again made plans to marry, but the plans were scuttled because, in the words of Parker, Sargent could not "stand up to either his mother or mine." Her daughter, Alicia, was born on June 23, 1974. In that same month, Sargent married Andrea Coleman and graduated from ISU. Sargent provided Parker with small amounts of support ($5.00 to $10.00), although there is some uncertainty in the record as to whether the support was provided on a regular basis. Sargent also wrote to Parker acknowledging that he was Anthony's father, but Parker destroyed these letters after Sargent married.
 
 
 7
 The testimony of Danny Gordon, Parker's brother-in-law, corroborated Parker's testimony before the ALJ. Sargent admitted to Gordon that he was Anthony's father. Also, Parker presented documentary evidence at the hearing. In a letter, Ms. Katheryn Timmes, Parker's and Sargent's high school counselor, stated that Sargent admitted to her that he and Parker were sexually active and that he was the father of Anthony. According to Timmes, Sargent "spoke of marriage and of taking care of his child often. He never did express any doubts to me that this child was not his." Loretta Brown, a distant relative of Sargent and Parker's co-worker, told the Department that on several occasions Sargent told Brown that he was the father of Anthony. In an affidavit, Edgar Sidner, a family friend of the Parkers, stated that he had personal knowledge that Sargent was Anthony's father.
 
 
 8
 The ALJ also reviewed a statement from Sargent's mother, Phyllis Hayes, in which she denied that Sargent was Anthony's father. While Hayes confirmed that Sargent and Parker dated during high school, she also related that "[Sargent] always swore that the first child Anthony, was not his." Despite the statement of Sargent's mother, which the ALJ characterized as "self-serving", and the fact that Sargent intended to contest the paternity suit, the ALJ concluded that Anthony was the "child" of Sargent under the Social Security Act, and therefore was entitled to surviving child's insurance benefits on the social security record of Sargent. On August 15, 1986, the Appeals Council overruled the decision of the ALJ and accordingly denied benefits. The Appeals Council found that Sargent's mother presented credible statements which contradicted Parker's assertion that Sargent was the father of Anthony, and that these statements were corroborated by Sargent's intent to contest the paternity suit. Parker subsequently filed an action in federal district court pursuant to 42 U.S.C. § 405(g) for review of this decision. The district court affirmed, and this appeal followed.
 
 
 9
 Parker argues that the district court erred by finding that the Secretary's decision was supported by substantial evidence. Specifically, Parker claims that the district court erred in determining that Sargent was not Anthony's father under Illinois intestacy law pursuant to 42 U.S.C. § 416(h)(2)(A). Next, Parker argues that the Appeals Council erred in not deferring to the fact-findings of the ALJ as is required under Illinois case law. Finally, Parker states that the district court erred in determining that Sargent failed to acknowledge Anthony as his son in writing under 42 U.S.C. § 416(h)(3)(C)(i)(I).
 
 II.
 
 10
 In reviewing the decision of the district court, we apply the same standards as that court applied in reviewing the Secretary's decision. Hayes v. Heckler, 797 F.2d 508, 510 (7th Cir.), cert. denied, 479 U.S. 988, 107 S.Ct. 580, 93 L.Ed.2d 583 (1986); Schaefer v. Heckler, 792 F.2d 81, 84 (7th Cir.1986); Whitney v. Schweiker, 695 F.2d 784, 786 (7th Cir.1982) (the clearly erroneous standard specified by Fed.R.Civ.P. 52(a) for review of a trial court's finding is inapplicable because the findings under scrutiny are those of the Secretary rather than a district court). Under 42 U.S.C. § 405(g), the findings of the Secretary must be upheld if they are supported by substantial evidence, which has been described as "more than a mere scintilla." See Bauzo v. Bowen, 803 F.2d 917, 923 (7th Cir.1986); see also Hayes, 797 F.2d at 510. The record must disclose such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Bauzo, 803 F.2d at 923 (citing Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971)); Schaefer, 792 F.2d at 84; Taylor v. Schweiker, 739 F.2d 1240, 1241 (7th Cir.1984). On the one hand, this court does not reweigh the evidence, decide the facts anew, or substitute its judgment for that of the Secretary. Bauzo, 803 F.2d at 923 (citing Delgado v. Bowen, 782 F.2d 79, 82 (7th Cir.1986)); see Hayes, 797 F.2d at 510. On the other hand, this court is not to act as an uncritical rubber stamp for the Secretary's decision. Bauzo, 803 F.2d at 923. The Secretary's conclusions of law are not entitled to such deference, and an error of law must be reversed. Schaefer, 792 F.2d at 84; see Hayes, 797 F.2d at 510; Strunk v. Heckler, 732 F.2d 1357, 1359 (7th Cir.1984).
 
 
 11
 The general criteria for entitlement to child's insurance benefits are found under 42 U.S.C. § 402(d)(1), which provides that every "child" of an individual who dies fully or currently insured under the Act is entitled to child's insurance benefits if the child who has applied for such benefits is unmarried, under the age of 18, and was dependent upon the insured individual at the time of the insured's death. Dependency is presumed if the parent is living with or contributing to the support of the child. 42 U.S.C. § 402(d)(3); see Hayes, 797 F.2d at 510. If not, then 42 U.S.C. § 416(h)(2) sets forth alternative rules for the determination of family status. Two of the rules set forth there are at issue in this case.[1] First, under section 416(h)(2)(A), benefits are available to those children who, under the substantive law of the insured decedent's domicile, would be considered a child of the insured for intestate succession. Second, under 42 U.S.C. § 416(h)(3)(C)(i)(I), benefits are available to those children whose parent has acknowledged "in writing that the applicant is his son."
 
 A.
 
 12
 Anthony would be entitled to benefits if he would inherit from Sargent under the intestate laws of the state in which Sargent was domiciled at his death. 42 U.S.C. § 416(h)(2)(A). The parties agree that Sargent was domiciled in the State of Illinois at the time of his death. The law of Illinois provides that a person may take by intestate succession only if he establishes by "clear and convincing evidence" that he is the child of the decedent. Ill. Rev. Stat. ch. 110 1/2, p 2-2(h); Brown v. Bowen, 847 F.2d 342, 343 (7th Cir.1988). Proof by clear and convincing evidence has been defined as "the quantum of proof which leaves no reasonable doubt in the mind of the trier of fact as to the truth of the proposition in question." Estate of Ragen, 79 Ill.App.3d 8, 34 Ill.Dec. 523, 528, 398 N.E.2d 198, 203 (1st Dist.1979); see Morelli v. Batelli, 68 Ill.App.3d 410, 25 Ill.Dec. 57, 58, 386 N.E.2d 328, 329 (1st Dist.1979); see also Brown, 847 F.2d at 345.
 
 
 13
 Parker is correct that the decision of the ALJ was not unreasonable. The ALJ observed Parker's and Gordon's testimony and found it credible. The ALJ found sufficient corroboration in evidence such as the fact that the letter from the guidance counselor stated that Sargent admitted paternity, that Parker had filed a paternity suit, and that the entry on the Public Aid form stated that Sargent had agreed to pay support. The ALJ discounted the statement of Sargent's mother as "self-serving", but did not mention Sargent's intent to contest the paternity suit. However, this court does not review the decision of the ALJ, but rather the decision of the Appeals Council. Bauzo, 803 F.2d at 921.[2]
 
 
 14
 The Appeals Council found that Parker's evidence of paternity does not stand unopposed, by discounting Parker's story and crediting the statements of Sargent's mother. The dispositive factor is that although there is much hearsay evidence that would support the conclusion that Sargent is the father of Anthony, the Appeals Council relied on the only evidence in the record that shows Sargent's response to being charged with paternity, namely his intent to contest the paternity proceedings. Because of the conflicting evidence, this is a close case, and in close cases the Secretary must prevail. See Hayes, 797 F.2d at 512. Therefore, we must uphold the Secretary's findings that Parker did not establish by clear and convincing evidence that Sargent was the father of Anthony.
 
 B.
 
 15
 Next, Parker contends that the Appeals Council used the wrong standard in reviewing the decision of the ALJ. Parker argues that both the substantive and procedural law of Illinois should apply when the Appeals Council determines eligibility under 42 U.S.C. § 416(h)(2). Parker cites no federal case law to support this proposition and instead refers the court to several Illinois cases in which state appellate courts deferred to the credibility determinations of the trial court in paternity proceedings. See In re Estate of Drisch, 112 Ill.App.2d 242, 250 N.E.2d 513 (1969); Harvey v. Lippens, 87 Ill.App.2d 363, 231 N.E.2d 613 (1967). The Secretary has delegated the authority to make final decisions to the Appeals Council and not the ALJ. See 20 C.F.R. §§ 404.900, 404.981, 416.1400, 416.1481; Bauzo, 803 F.2d at 921. Therefore, unlike the final orders of a state trial judge which are reviewed by the Illinois appellate courts, the findings of an ALJ are not binding on the Appeals Council. See Bauzo, 803 F.2d at 922.
 
 C.
 
 16
 Finally, Parker argues that Sargent acknowledged in writing that Anthony is his child pursuant to 42 U.S.C. § 416(h)(3)(C)(i)(I).[3] Parker contends that the controlling standard for sufficient written acknowledgement is set forth in Programs Operations Manual ("POMS") § GN00306.170[4] which provides in pertinent part:
 
 
 17
 [F]or a document to be considered written acknowledgement, it is not necessary that the document be in the [wage earner's] own handwriting or signed by him/her, provided the document is a written record prepared at his/her direction or with his/her authority. For example, if an individual acknowledges paternity of a child during a face-to-face interview in a welfare office, and he/she is aware the acknowledgement is being recorded, the welfare record constitutes a written acknowledgement. However, an informal or telephone interview by a welfare worker even though recorded, would not ordinarily constitute written acknowledgement.
 
 
 18
 This provision allows for written acknowledgement even though the statement is not written or signed by the wage earner. In support of her argument, Parker refers the court to the statement in a Public Aid report which states that "Mr Sargent agreed to pay support after he graduated from ISU in May, 1974. To date he has not paid any. He is getting married August 10, 1974." Parker argues that since this statement was written on a public aid form, the statement is sufficient written acknowledgement.
 
 
 19
 This argument has no merit. The POMS manual has no legal force and therefore the standard cannot be controlling in this case. See Pulley v. Bowen, 817 F.2d 453, 454 (7th Cir.1987), (citing Schweiker, 450 U.S. at 789, 101 S.Ct. at 1471 (manual is not a regulation and does not bind the Secretary)). Even if the POMS manual were controlling, Parker's claim would be deficient. The record contains no evidence that the statement in the Public Aid form was written at Sargent's direction or with his authority. Even assuming that the statement was made by Sargent, and not by Parker or some other person, the record does not reveal whether the statement was given during a face-to-face interview at the welfare office, over the telephone or during an informal interview. Absent such evidence, the statement in the Public Aid form is not a sufficient written acknowledgement of paternity.
 
 
 20
 A similar argument was made and rejected in Garcia v. Sullivan, 874 F.2d 1006 (5th Cir.1989). In that case, the claimant argued that a birth certificate of a child born out of wedlock completed by a midwife naming the deceased wage earner as both the father of the child and as the informant who supplied that information constituted a written acknowledgement of paternity. Id. at 1007. The Fifth Circuit held that the certificate did not suffice to establish acknowledgement absent additional evidence tending to prove that the wage earner authorized the midwife to identify him in writing as the father. Id. at 1006-07; see 42 U.S.C. § 416(h)(3)(C)(i)(I). The court explained that the Act is not satisfied by a third person's statement in writing that a wage earner was the father of the claimant, but only by a written acknowledgement, a statement in writing made by or at least on the authority of the father. Id. at 1008. No such evidence has been provided in this case and the ambiguous acknowledgement of paternity in the Public Aid form should not be construed presumptively in Parker's favor.
 
 III.
 For these reasons, the judgment is
 
 21
 AFFIRMED.
 
 
 
 [1]
 Although they are not at issue here, the other methods include: common law marriage of one's parents, defined as a technically deficient marriage ceremony, 42 U.S.C. § 416(h)(2)(B); a court order requiring the insured person "to contribute to the support of the applicant because the applicant was his son or daughter", 42 U.S.C. § 416(h)(3)(C)(i)(I); a determination by the Secretary that the insured person was the parent of and "was living with ... the applicant at the time such insured individual died", 42 U.S.C. § 416(h)(3)(C)(ii); a determination by the Secretary that the insured person was the parent of and was "contributing to the support of the applicant" for benefits when the insured person died, id.; and a decree by a court that the insured person is the "father of the applicant", provided that "such ... court decree ... was made before the death of such insured individual", 42 U.S.C. § 416(h)(3)(C)(i)(II). See generally Trammell v. Bowen, 819 F.2d 167, 168 (7th Cir.1987)
 
 
 [2]
 Although the findings of the ALJ are not binding on the Council, they should not be ignored. Bauzo, 803 F.2d at 922. The conflicting findings are part of the record as a whole, and are considered in determining whether the Council's decision is supported by substantial evidence. Id
 
 
 [3]
 Parker argues that neither the Appeals Council nor the district court addressed the issue of written acknowledgement of paternity. Our review of the record reveals otherwise. The Appeals Council stated in its opinion that the record revealed no evidence of written acknowledgement, and the district court in its decision concurred on this point. The issue is therefore properly before us on appeal
 
 
 [4]
 The POMS is a handbook for internal use by employees of the Social Security Administration. Schweiker v. Hansen, 450 U.S. 785, 790, 101 S.Ct. 1468, 1472, 67 L.Ed.2d 685 (1981)