David DAVIS, Plaintiff,

v.

Shirley S. CHATER, Commissioner of Social Security, Defendant.

No. 95 C 5194.

United States District Court,
N.D. Illinois,
Eastern Division.

Dec. 11, 1996.

Marcie E. Goldbloom, Frederick J. Daley, Frederick J. Daley, Ltd., Chicago, IL, for David Davis.

Daniel Edward May, U.S. Attorney's Office, Chicago, IL, for Shirley S. Chater.

### MEMORANDUM OPINION AND ORDER

KEYS, United States Magistrate Judge.

Plaintiff David Davis seeks judicial review, pursuant to the Social Security Act, 42 U.S.C. §§ 405(g), 1381(a) and 1382(a), of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for Supplemental Security Income ("SSI").[1] Plaintiff moves this Court for sum-

---

1. Supplemental Security Income provides a minimum level of income to persons who are age 65 or over, blind, or disabled, and who do not have sufficient income and resources of their own. 20 C.F.R. §§ 416.110, 416.202 (1994).

mary judgment reversing the Commissioner's decision denying his claim for such benefits or, in the alternative, an order remanding the case to the Commissioner for further proceedings. The Commissioner has filed a Cross–Motion for Summary Judgment in her favor. For the reasons set forth below, the Commissioner's Motion is denied and Plaintiff's Motion is granted in part; specifically, Plaintiff's claim is remanded to the Commissioner for further proceedings consistent with this Memorandum Opinion and Order.

## Procedural History

Plaintiff filed an application for SSI on December 24, 1991, claiming that he had been disabled since November 1, 1991 because of high blood pressure and asthma. (R. at 30–33.)[2] After the Social Security Administration denied his application and request for reconsideration of that denial (R. at 34–40), Plaintiff requested an administrative hearing (R. at 40), which was conducted by Administrative Law Judge ("ALJ") Richard E. Sprague on January 25, 1993. (R. at 300–365.) On October 8, 1993, ALJ Sprague issued a decision finding that, while the medical records revealed that Plaintiff suffered from hypertension, asthma, diabetes, problems with his left shoulder, and cataracts, he was not disabled because he could still perform his past relevant work as a helper on a handicapped van. (R. at 244–251.) Therefore, his application for SSI was denied.

On December 6, 1993, Plaintiff appealed the ALJ's finding that he was not disabled by filing a Request for Review with the Appeals Council. (R. at 252.) On March 22, 1994, the Appeals Council remanded the case to the ALJ to resolve inconsistencies which it found in the ALJ's analysis regarding Plaintiff's ability to perform his past work as a handicapped van helper. (R. at 254–255.)

Upon remand, ALJ Sprague conducted another hearing on July 24, 1994 (R. at 360–408), after which, on November 16, 1994, the ALJ issued another decision, again finding that Plaintiff could still perform his past work and was, therefore, not disabled. (R. at

15–22.) In so finding, the ALJ found, in addition to the impairments enumerated in his earlier decision, that Plaintiff suffered from mild depression and controlled alcohol use. On November 25, 1994, Plaintiff filed a Request for Review of the ALJ's decision with the Appeals Council. (R. at 10.) On July 24, 1995, the Appeals Council denied Plaintiff's Request for Review, finding that the ALJ's decision was supported by substantial evidence (R. at 4–5), which denial stands as the final decision of the Commissioner and is the subject of the Cross–Motions for Summary Judgment now before this Court.

## Factual Background

### A. Plaintiff's Testimony

At the first hearing, Plaintiff testified that he was then 52 years old, having been born on August 18, 1940. He is now 56 years of age. He completed nine years of school and has had no vocational training. Other than doing odd jobs, such as cutting grass and painting, he had last worked regularly about two or three years earlier as a janitor, and was subsisting on public aid. After being laid off from the job as a janitor, he worked about three days a week, when needed, as a helper on a van which transported handicapped individuals to and from hospitals, nursing homes, and other destinations. (R. at 304–313.) As Plaintiff described that job at the first hearing, there was no lifting involved, and he worked less than full-time, for which he was paid about $60.00 per week. (R. at 312.) He continued to do that work until the company went out of business.

In describing his medical problems, Plaintiff testified that he had asthma, high blood pressure, diabetes, cramps in his left shoulder (he is right-handed, R. at 305) when he lifts something, and blurred vision at night. (R. at 319–323.) In describing his daily activities, Plaintiff testified that he rents a room in the apartment of a friend and that he cooks, cleans, shops and does his own laundry. (R. at 327.) He would walk about three miles three times per week pursuant to his doctor's instructions. From Plaintiff's testimony, it appeared that all of his medical

---

**2.** References are to the certified administrative record prepared by the Commissioner and filed with this Court pursuant to 42 U.S.C. § 405(g).

problems were controlled with medications. (R. at 319–324.)

When queried by the ALJ at the first hearing regarding his use of alcohol, Plaintiff testified that, prior to about one year earlier, he would drink about three six-packs of beer per day, but that, when he learned that he had diabetes and asthma, about a year prior to the hearing, he reduced his beer consumption to only about one six-pack within a two-week period. He drank only beer, and has never been treated for alcohol abuse or mental problems. (R. at 328–329.)

At the second hearing, Plaintiff testified that the handicapped van job sometimes, but only occasionally, involved pulling patients' wheelchairs up the ramp of the van or the steps of the patients' homes, which was the heaviest part of the job. He actually worked five days a week, ten hours per day, for about one year. (R. at 378–380.)[3] By the time of the second hearing, Plaintiff's ability to walk for long distances had, inexplicably, decreased dramatically and his alcohol intake had increased significantly. (R. at 387–389, 392.) He testified that he was then drinking about a six-pack of beer per day and had also begun drinking whiskey, consuming a pint of whiskey in two days. (R. at 389–390.) In response to questions from the ALJ, Plaintiff testified that he gets along well with others, has an active social life, his mood fluctuates and that, other than his inability to work, nothing really bothers him. (R. at 394–395.)

### B. Medical Records

Plaintiff testified that he was being treated by doctors at Cook County Hospital, where he had appointments about every four months, at which time his blood pressure is checked and his prescriptions are refilled. (R. at 319.) Plaintiff indicated that he began treatment at Cook County Hospital in July, 1991 for his blood pressure and breathing problems. (R. at 49.) Records from Cook County Hospital reveal that Plaintiff was first admitted on June 24, 1991, and that he had no prior medical history. He was diagnosed as having pneumonia, and was treated and released on July 1, 1991. (R. at 64–82, 172–184.) Plaintiff's follow-up examinations in 1991 and 1992 were uneventful. (R. at 83–88, 213–218.)[4]

On February 18, 1993, Plaintiff complained of worsening vision in both eyes, due to cataracts, and cramps in his left arm and the left side of his neck upon lifting heavy objects. (R. at 221.)[5] At his next visit, on March 18, 1993, Plaintiff had no specific complaints. (R. at 219.) On June 25, 1993, Plaintiff was examined by Dr. Cheryl Kraft–Cooper. He described his main problem as being unable to see at night, noting that he had undergone cataract surgery three months earlier.[6] The doctor noted that he had hypertension, diabetes and asthma. (R. at 233.) In medical reports from Cook County Hospital dated February 20, 1992, Plaintiff's physician stated that he had hypertension, diabetes and visual problems due to cataracts. He noted, however, that Plaintiff was not impaired with respect to his ability to perform work-related activities. (R. at 90–93.)

On April 3, 1992, Plaintiff was examined by Dr. Howard Bartman. His complaints were the same as those later voiced to Dr. Draft–Cooper on June 25, 1993. Plaintiff told Dr. Bartman that he had been in the habit of drinking up to two or three six-packs of beer and a half-pint of gin daily until 1991, but that he was then drinking only one six-pack per week. Dr. Bartman noted no abnormalities during his examination. (R. at 94–105.)

The medical records set forth above are the records on which the ALJ relied in his

---

3. While it is not entirely clear from the record, it appears that Plaintiff actually worked as a helper on a handicapped van on two separate occasions—once on a short, part-time basis and once for about one year, full-time. (R. at 380–381.)

4. Plaintiff was diagnosed as having diabetes on February 20, 1992, which was described as being controlled with diet. (R. at 231.)

5. It is noted that Plaintiff was diagnosed as having a strain of the left rotator cuff on March 1, 1989. (R. at 232.) However, there does not appear to have been any complaints of that problem again until February 18, 1993.

6. Cataract surgery was performed on the left eye on March 8, 1993. (R. at 202.)

first decision in determining that Plaintiff could perform his past work.

The case was remanded to the ALJ on March 22, 1994. On July 6, 1994, Plaintiff underwent a psycho-diagnostic evaluation by Norman G. Kerr, Ph.D., a licensed clinical psychologist, to whom Plaintiff was referred by his new attorney. (R. at 260.) Dr. Kerr administered a battery of tests designed to determine Plaintiff's mental status, intellectual functioning and personality functioning. He also conducted a formal interview, focusing on Plaintiff's history and complaints, and reviewed the medical records set forth above. Dr. Kerr concluded that, while Plaintiff attempted to minimize the extent of his intake of alcohol, it was clear that he has a serious drinking problem. He found further that other psychological problems—including depression and psychosomatic symptoms—are probably a consequence of, rather than the cause of, his abuse of alcohol. Dr. Kerr concluded that, based on his multiple physical and psychological factors and his excessive use of alcohol, it is unlikely that Plaintiff would be able to function adequately in a competitive work situation. (R. at 260–266.) In a Psychiatric Review Technique Form appended to his report, Dr. Kerr opined that the severity of Plaintiff's psychological problems meets the Commissioner's definition of severity that would render an individual disabled. (R. at 267–273.)

### C. *The ALJ's Findings*

Plaintiff's testimony at both hearings was essentially the same, except that he was questioned more specifically concerning his job duties as a handicapped-van helper during the second hearing, in accordance with questions raised by the Appeals Council in its remand order. Also, because counsel had referred Plaintiff for a psychological evaluation and the subsequent psychological report of Dr. Kerr, Plaintiff was questioned closely regarding his alleged alcohol abuse and other mental problems. In his decision, the ALJ cited Plaintiff's testimony concerning his vocational and past work history, his daily activities, his medical impairments and the limitations caused thereby, and his drinking habits. He noted Plaintiff's testimony at the second hearing that indicated that, other than the fact that his ability to walk three miles had been decreased to only a few blocks because of shortness of breath, his condition remained about the same as at the first hearing. Based on Plaintiff's testimony concerning his ability to stand, walk, and lift, his description of his daily activities and his lack of recent medical treatment, the ALJ concluded that Plaintiff—who left his last job because the employer went out of business, not because of his inability to perform that work—could still perform that work and was not, therefore, disabled. (R. at 15–22, 244–251.)

In his final decision, the ALJ noted that, neither Plaintiff nor his first attorney had made any attempt to allege or show that Plaintiff was disabled because of a mental impairment and that the only evidence relating to a mental impairment was the report of Dr. Kerr. (R. at 20.) The ALJ noted that Plaintiff had appeared before him on two occasions, that he found nothing unusual about Plaintiff's manner or demeanor, and that his prior attorney apparently concurred in the ALJ's assessment in this regard. The ALJ noted that, while Plaintiff does drink beer regularly and whiskey occasionally, there was no indication that his drinking would interfere with his performance of his last job, noting that he testified that he never gets drunk and that he had worked on that job in the past even though he drank.

With respect to Dr. Kerr's opinion, the ALJ generally discredited it, finding that his findings were not supported by the evidence of record, including Plaintiff's own testimony and his lifestyle. With respect to Dr. Kerr's ratings of the severity of Plaintiff's mental impairments, the ALJ opined that he was only "mildly" (R. at 20, 25) affected in his ability to function in a work setting rather than being "markedly" restricted, as found by Dr. Kerr. (R. at 273.) The ALJ reasoned that, if Plaintiff's mental impairments were as severe as found by Dr. Kerr, such problems would not have gone unnoticed by his treating physicians at Cook County Hospital. (R. at 20.) Finally, the ALJ disagreed with Dr. Kerr's opinion that Plaintiff's mental impairments were at a level of severity that

would meet the Commissioner's criteria for a finding of disability. (R. at 21.)

## STANDARD OF REVIEW

In reviewing the Commissioner's (here the ALJ's) decision, the court may not decide facts anew, reweigh the evidence, or substitute its own judgment for that of the Commissioner. *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir.1994). Rather, the court must accept findings of fact that are supported by "substantial evidence," 42 U.S.C. § 405(g) (1988), where substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Herron*, 19 F.3d at 333 (quoting *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971)). The ALJ must consider all relevant evidence and may not select and discuss only that evidence that favors his ultimate conclusion. *Id.* Where conflicting evidence allows reasonable minds to differ, the responsibility for determining whether a claimant is disabled falls upon the Commissioner (or ALJ), not the courts. *Herr v. Sullivan*, 912 F.2d 178, 181 (7th Cir.1990). *See also Stuckey v. Sullivan*, 881 F.2d 506, 509 (7th Cir.1989) (the ALJ has the authority to assess medical evidence and give greater weight to that which he finds more credible). This Court is limited to determining whether the Commissioner's final decision is supported by substantial evidence and based upon proper legal criteria. *Ehrhart v. Secretary of Health and Human Services*, 969 F.2d 534, 538 (7th Cir.1992).

This does not mean that the Commissioner (or ALJ) is entitled to unlimited judicial deference, however. In addition to relying on substantial evidence, the ALJ must articulate his analysis at some minimal level and state his reasons for accepting or rejecting "entire lines of evidence," although he need not evaluate in writing every piece of evidence in the record. *See Herron*, 19 F.3d. at 333; *see also Young v. Secretary of Health and Human Services*, 957 F.2d 386, 393 (7th Cir. 1992) (ALJ must articulate his reason for rejecting evidence "within reasonable limits" in order for meaningful appellate review); *Guercio v. Shalala*, No. 93 C 323, 1994 WL 66102, *9 (N.D.Ill.1994) (ALJ need not spell out every step in his reasoning, provided he has given sufficient direction that the full course of his decision may be discerned), (citing *Brown v. Bowen*, 847 F.2d 342, 346 (7th Cir.1988)).

The Social Security regulations prescribe a sequential five-part test for determining whether a claimant is disabled. *See* 20 C.F.R. § 416.920 (1994). The ALJ must consider: (1) whether the claimant is presently unemployed; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the claimant's impairment meets or equals any impairment listed in the regulations as being so severe as to preclude substantial gainful activity; (4) whether the claimant is unable to perform his past relevant work; and (5) whether the claimant is unable to perform any other work existing in significant numbers in the national economy. *Id.; see also Young*, 957 F.2d 386, 389. A finding of disability requires an affirmative answer at either step 3 or step 5. A negative answer at any step (other than step 3) precludes a finding of disability. *Young*, 957 F.2d at 389. The claimant bears the burden of proof at steps 1–4, after which the burden shifts to the Commissioner at step 5. *Id.*

## Discussion

In the case at bar, the ALJ found that, while Plaintiff satisfied his burden of proof as to steps 1 and 2, he did not have an impairment, or combination of impairments, which met or equalled, in severity, any of the impairments listed in the regulations (step 3). This finding necessitated an analysis at step 4, where the ALJ found that Plaintiff could perform his past work as a handicapped-van helper. Based on its review of the record, the regulations, and case law, the Court finds that the ALJ did not adequately develop the record in order to explicate his rationale for his ultimate findings. Specifically, he rejected the opinions of an examining psychologist—which is the only evidence of a mental impairment in the record—without adequate justification for doing so. Therefore, such findings are not supported by substantial evidence.

First, with respect to whether a combination of Plaintiff's physical and/or mental impairments meets or equals one of the impairments listed in the regulations, the ALJ obviously disagreed with Dr. Kerr but failed to comment thereon. For example, Dr. Kerr—who, since 1986, performs psychological testing and provides impartial expert testimony, at the request of the Commissioner, regarding mental disability determinations (R. at 279–280), and who, presumably, is quite familiar with the requirements of the regulations in this regard—opined that a combination of Plaintiff's mental impairments meets the Commissioner's criteria for disability. (R. at 267, 273.) The Court recognizes that some of the facts discerned from Plaintiff by Dr. Kerr during his interview and testing were inconsistent with Plaintiff's testimony at the hearing, and that Dr. Kerr's ultimate conclusions in this regard might be questionable to a layman. It is understandable, therefore, that the ALJ would question the accuracy of Dr. Kerr's conclusions, especially in view of the fact that there is no other evidence of any significant mental impairment in the record and that this issue was raised, for the first time, only after the case was remanded by the Appeals Council—which was more than two and one-half years after Plaintiff alleges that he became disabled.

Dr. Kerr's report was received by the ALJ on July 26, 1994, one day prior to the scheduled hearing (R. at 259), but 20 days after the report was signed by Dr. Kerr. The record does not reveal why counsel did not submit the report to the ALJ until the day before the hearing. Presumably, however, the ALJ reviewed the report prior to or at the hearing. If he had had any questions as to the accuracy of the report and conclusions, he could have postponed the hearing and referred Plaintiff for another psychological evaluation and/or retained a medical expert to give testimony at the hearing regarding the report. Had such a procedure been followed and had another medical expert arrived at the same conclusion regarding Dr. Kerr's report and conclusions as did the ALJ, the ALJ could have credited the testimony of the medical expert over the opinions of Dr. Kerr and achieved the same results.

The ALJ's error was in rejecting the report and conclusions of Dr. Kerr—which is the only medical evidence in the record on the mental impairment issue—and substituting his own medical opinion for that of Dr. Kerr. While this would have been permissible had there been conflicting reports on the issue, from which the ALJ would have had to choose, it was impermissible where Dr. Kerr's report constituted the *only* evidence on the mental impairment issue. *See Kuwahara v. Bowen,* 677 F.Supp. 553, 561 n. 11 (N.D.Ill.1988).

Secondly, the regulations provide that the level of intellectual functioning of an individual should be considered, along with other physical or mental impairments, in determining whether the severity of the combined impairments meets or equals any of the impairments set forth in the regulations that are presumptively disabling. 20 C.F.R. 404, pt. 404, subpt. P, App. 1. In particular, Section 12.05 C provides that a valid verbal, performance, or full-scale I.Q. of 60 through 70, along with a physical or other mental impairment, imposing additional and significant work-related limitations, may render an individual disabled. Dr. Kerr administered the Weschler Adult Intelligence Scale–Revised ("WAIS–R") test to Plaintiff during his evaluation, and found that Plaintiff had a performance I.Q. of 66. Although finding that Plaintiff is not mentally retarded, Dr. Kerr found that his intelligence is between the "significantly sub-average" and "borderline" levels. (R. at 263.) This finding is significant because Dr. Kerr also noted that Plaintiff has other physical impairments—as supported by the record—and that he suffers from an affective mental disorder. It is clear that Dr. Kerr's conclusion that Plaintiff could not function adequately in a competitive work situation was based on a combination of his sub-average intellectual functioning, his multiple physical symptoms, his psychological problems, and his excessive use of alcohol. (R. at 265.) Inexplicably, the ALJ did not comment on Plaintiff's sub-average intellectual functioning, apparently discrediting Dr. Kerr's findings in this regard.

As set forth above, Dr. Kerr's finding as to Plaintiff's intellectual functioning level is the

only evidence in the record on that issue. While Dr. Kerr's findings certainly are questionable—considering Plaintiff's past history of work and his daily activities—there simply is nothing in the record with which a layman could refute these findings. Further testing and/or the opinion of another medical expert would be necessary.

Defendant makes two arguments with respect to Plaintiff's use of alcohol. First, she notes that the ALJ found that Plaintiff's testimony and the record indicate that Plaintiff is able to control his alcohol intake and that he worked successfully in the past, despite the fact that his alcohol intake was as great then as it is now. Defendant's Memorandum in Support of Defendant's Motion for Summary Judgment ("Def.'s Mem. in Supp.") at 14. The Court agrees with Defendant's observations in this regard. Thus, consistent with Plaintiff's testimony, the medical records show that Plaintiff was described as abusing alcohol upon his admission to Cook County Hospital in July, 1991. He expressed a will to quit drinking and was referred for alcohol counseling. (R. at 68, 70, 179–180.) There are no further indications in the medical records that Plaintiff abused alcohol thereafter. In fact, he testified at the first hearing that he had decreased his alcohol intake to one six-pack of beer within a two-week period. However, in his interview with Dr. Kerr and at the second hearing, Plaintiff indicated that his drinking had increased, but that it would have no impact on his ability to work.

Defendant argues, in the alternative, that, even if the Court rejects the ALJ's finding that Plaintiff's abuse of alcohol would not affect his ability to perform his past work and, instead, finds that his drinking habits might significantly impact upon his ability to work, then the appeal should be dismissed because Plaintiff would not be entitled to benefits under a recently enacted law. Def.'s Mem. In Supp. at 15.

On March 29, 1996, Congress passed legislation precluding an award of SSI benefits to individuals who would otherwise be disabled if the disability finding is based on drug abuse or alcoholism. P.L. No. 104–121, 110 Stat. 847 (1996). The legislation, passed as an amendment to 42 U.S.C. § 423(d)(2), provides that an individual will not be considered to be disabled for purposes of receiving disability benefits if alcoholism or drug addiction would be a contributing factor material to the Commissioner's finding of disability. P.L. No. 104–121 § 105(b)(1). In determining whether drug addiction or alcoholism is a contributing factor material to a finding of disability, the Commissioner's regulations provide that such a finding turns on whether the individual would be disabled *independent* of drug addiction or alcoholism. 20 C.F.R. § 416.935. If the Commissioner finds that, but for an individual's drug addiction or alcoholism, he/she would not be disabled, then no SSI benefits are payable.

In her alternative argument here, the Commissioner asserts that, even if it were determined that Plaintiff is disabled, he would not be entitled to benefits by virtue of the new legislation because his abuse of alcohol would have been a material contributing factor to such finding. Def.'s Mem. In Supp. at 15–18. Plaintiff argues that, because his application was pending at the time of the passage of the new law, it does not apply retroactively to this case. Plaintiff's Reply to Defendant's Motion for Summary Judgment ("Pl's. Reply") at 7–17.

For the reasons set forth above, the Court is not quite sure how much weight should have been given to the report and opinions of Dr. Kerr regarding the extent to which Plaintiff's alcohol abuse—assuming its presence—would affect his ability to work. The ALJ clearly gave little, if any, weight to this report, without adequately developing the evidence on that issue. For example, Dr. Kerr opined that the severity of Plaintiff's affective mental disorder and his alcoholism meets the Commissioner's criteria for a finding of disability. (R. at 267–273.) It is not clear, however, whether or to what extent the alcoholism contributes to the severity of the affective disorder. Also, Dr. Kerr cited a litany of problems—both physical and mental—as contributing to his finding that Plaintiff is unable to work. (R. at 265–266.) His excessive use of alcohol was only one of the multiple factors enumerated by Dr. Kerr in his opinion in this regard. It is not known

whether the non-alcohol-related factors would have, in the opinion of Dr. Kerr, rendered Plaintiff unable to work, independent of the alcohol abuse. These determinations are crucial in assessing whether Plaintiff is entitled to benefits—assuming he is otherwise disabled—under the newly-enacted legislation. Such determinations are appropriately initially made by the Commissioner, not by the Court.

### Conclusion

The court, having carefully reviewed the ALJ's decision and the entire record, finds that his decision—particularly his finding that Plaintiff's non-exertional impairments are not significant—is not supported by substantial evidence. Based on Plaintiff's testimony, the records from Cook County Hospital, and the reports from his treating physicians, the Court finds no fault with the ALJ's thoroughly analyzed and well-reasoned finding that Plaintiff's physical impairments alone would not prevent him from performing his past work as a handicapped-van helper. However, the opinion of the examining psychologist that Plaintiff is disabled as a result of his mental impairments or by a combination of his physical and mental impairments—which is the only such evidence in the record—was not properly refuted by any other evidence. Therefore, the AU's contrary finding in this regard is not supported by substantial evidence.

For the foregoing reasons, the Court remands this matter to the Commissioner for further proceedings consistent with this Opinion.[7] Upon remand, the ALJ must initially determine the nature and extent of Plaintiff's non-exertional impairments, including his alcoholism. In particular, he must determine whether these impairments, individually or in combination, are of such severity as to render Plaintiff disabled per se, as found by Dr. Kerr. Assuming the answer to that question is in the negative, the AU must then determine whether Plaintiff's mental impairments alone, or in combi-

nation with his physical impairments, would render him unable to engage in work functions, as found by Dr. Kerr. As set forth above, these determinations should be made through an evaluation by another psychologist/psychiatrist and/or testimony by such professional at a hearing.

■ Plaintiff seeks an award of attorney's fees pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412. The Court notes that Plaintiff, in his request for review of the AU's decision, alleged that the ALJ had impermissibly rejected the report of Dr. Kerr, even though his report constituted the only evidence in the record concerning Plaintiff's newly alleged mental impairments. Counsel urged that the Commissioner reverse the ALJ's decision or remand the case to another ALJ for further proceedings, including the procurement of further evidence on the mental impairment issue. Counsel noted, as did the Court, that, had the ALJ been dissatisfied with the report of Dr. Kerr, he should have had Plaintiff evaluated by another mental health professional and/or obtained testimony from an expert at the hearing. (R. at 293–299.)

Notwithstanding the admonitions of counsel, the Commissioner sustained the decision of the ALJ. Under these circumstances, the Court finds that the position of the Commissioner was not substantially justified within the meaning of 28 U.S.C. § 1412(a)(2)(d)(1)(A). Therefore, the Court awards fees in favor of Plaintiff and against the Commissioner.

---

7. In remanding this case to the Commissioner, the Court specifically declines to express any opinion as to the possible merits of the case.

· But for the AU's treatment of Dr. Kerr's *uncontradicted* expert report, the Court would have found no fault with his findings.